KENNER and another, Respondents, vs. EDWARDS REALTY & FINANCE COMPANY, Appellant.

*February 13—May 12, 1931.*

For the appellant there was a brief by *Crawford & Crawford* of Superior, attorneys, and *Francis M. Crawford* of Duluth, Minnesota, of counsel, and oral argument by *William P. Crawford.*

For the respondents there was a brief by *Cadigan & Cadigan* and *Dietrich & Daley,* all of Superior, and oral argument by *Charles P. Cadigan, Carl H. Daley,* and *Peter B. Cadigan.*

FAIRCHILD, J.   A memorandum of agreement to purchase an interest in lands is not void under the statute of frauds when it contains terms essential in making it definite with respect to who the contracting parties are, their relation to each other, who the seller is, and who the buyer, their intention, the property, and the terms of payment.   The provisions of the statute are very explicit.

"Every contract for the leasing for a longer period than one year or for the sale of any lands or any interest in lands shall be void unless the contract or some note or memorandum thereof, expressing the consideration, be in writing and be subscribed by the party by whom the lease or sale is to be made or by his lawfully authorized agent."   Sec. 240.08, Stats.

The controlling question presented by the statement of facts is, Does the thirty thousand dollar mortgage which appellant agreed to assume form such an essential part of the executory contract that its terms ought to have been set out in the written memorandum, or is a mortgage thus referred to and agreed to be assumed so independent and separate from the agreement to purchase that the parties may resort to parol evidence to determine whether or not it is the particular collateral agreement incorporated in the contract

by reference? Is this mortgage a part of the contract of purchase, or does its relation thereto begin and end, so far as the main contract is concerned, with the provision in which respondents agree to assume it? The mortgage was not in existence at the time the sales agreement was signed, but it appears from the language used in framing the agreement to purchase that the minds of the parties met on the proposition of two separate and distinct agreements, one under which the respondents were to purchase the real estate by paying a certain sum and assuming a mortgage, and the other related, and closely connected, being the mortgage to be assumed by which payment of a portion of the purchase price was to be made, but still an independent and collateral agreement. The respondents agreed to purchase the property and the words used by them are apt and sufficient, the terms are definitely set down, the property correctly described as required by the statute of frauds in such matters. The portions of this contract material to the questions under consideration read:

"The price shall be sixty-three thousand ($63,000) dollars and the acceptance of a deed. . . . Of said purchase price the sum of one thousand ($1,000) dollars by way of deposit is now paid; . . . and the balance shall be paid as follows: the sum of fourteen thousand ($14,000) dollars in cash on acceptance of deed by the purchasers, which deed will not be delivered until the vendor effects a mortgage of thirty thousand ($30,000) dollars on said premises, which at the present time the said vendor is negotiating for with Geo. G. Newton Co. of Superior, Wisconsin; the further sum of thirty thousand ($30,000) dollars by assuming and agreeing to pay the first mortgage to be placed on said premises as heretofore mentioned, and the balance of eighteen thousand dollars at the rate of four hundred ($400) dollars per month, said payments to begin after the placing of the thirty thousand ($30,000) dollar mortgage by said vendor, and the acceptance of a deed by said purchasers together with interest at the rate of six per cent. per annum on the

unpaid balance to be paid at the same time as payments of principal."

It was also agreed:

"The purchasers shall not be obliged to complete this deal or accept the premises or pay any further additional amounts on purchase unless said vendor within a reasonable time, to wit, ninety days, shall cause said loan to be secured by said mortgage for thirty thousand ($30,000) dollars on said premises, and that in case said vendor fails to effect said loan and place said mortgage on the premises the purchasers shall not be bound. . . ."

Such a contract satisfies the calls of the statute of frauds although in its recitals it may not expressly set forth all parts and related portions of the agreement, if by reference to other independent writings or determinable fact it becomes definite in the particulars required by the statute. In *Washburn v. Fletcher,* 42 Wis. 152, at p. 170, it is said:

"The writing signed by the party need not expressly specify all that the statute requires. It is sufficient if it does so by reference to other writings which contain the required specifications."

From the pleadings the facts appear to be that negotiations were under way. As this is a matter of pleading we must be influenced by the very apparent and reasonable inference that definite and available terms of the mortgage to be assumed were accessible and that the parties to the main agreement were contracting in relation thereto. The contract in effect says as much when it provides that unless the negotiations result in the loan the agreement to purchase is at an end and the earnest money to be returned. In *Chudnow v. Ketter,* 161 Wis. 432, 154 N. W. 699, a contract indefinite as to what proportion of the property was owned by the seller was held to be sufficient because "the public records might be resorted to to ascertain what the respective interests of the defendant and the minor were, without run-

ning counter to the statute of frauds." The respondents here deal with a mortgage, negotiations for which are known by them, and although not public records are, we must assume, within the reach of the respondents as well as of the appellant.

Negotiations for this particular mortgage were under way between the appellant and the Geo. G. Newton Company of Superior, Wisconsin. The respondents and appellant contracted with reference thereto and included these negotiations and their expected result in their contract by reference. It seems unreasonable to assume that an independent contract, the terms of which must have been considered and which was to be finally executed by appellant to run to a third party, and then under the agreement appellant's obligations as fixed by the third party and itself were to be assumed by the respondents, had any part or place in the principal or main agreement other than to fix the terms of the contract and bind the respondents to assume such mortgage when completed. While the details of this agreement are not exactly in accord with this illustration they still suggest the fairness of the question as to whether or not an agreement to purchase property, paying a certain amount and assuming an existing mortgage, would not be a sufficient contract under the statute? Respondents argue that the agreement is lacking in provisions as to terms or conditions or time when the mortgage shall be due, that in effect the payment of the $30,000 is to be deferred and no time of payment is provided, and therefore the agreement to purchase is indefinite and void. The cases relied on to support their contention are distinguishable from this case in an important and material respect. In those cases the agreement was lacking in the respect suggested by respondents and there was nothing in the contracts there under consideration to warrant the court looking other than to the contract to find the terms fixed by the parties themselves. In those cases

to uphold the contract the court would have been obliged by its decree to complete or make a new contract for them. Here the terms are fixed: pay so much and assume a certain mortgage is the substance of the agreement. In *Schmeling v. Kriesel*, 45 Wis. 325, because the contract set out in the complaint was incomplete in an "essential particular and because the defect could not be supplied by any authorized legal presumption," the conclusion was reached that the contract could not be enforced. The portion of the contract in that case material on this point reads:

"Possession of land is first to be given on the first of November, 1877, when then also one thousand dollars of the purchase money are to be paid: the rest may stand upon the farm."

Here evidently is a failure to specify the time when a portion of the purchase money would be due and payable and no plan or other method or agreement was suggested in the contract of purchase for overcoming this defect and it was consequently within the statute of frauds.

In *Harney v. Burhans*, 91 Wis. 348, 64 N. W. 1031, the writing was said by the court to be insufficient to satisfy the statute of frauds, but it lays down the general rule as follows:

"It is not necessary that the memorandum should contain all the parts of the contract, or be formal. . . . It will satisfy the statute of frauds if it contains all the essential terms of the contract, either by its terms or by reference to other writings, so that it will not be necessary to resort to parol evidence to explain it."

In *Buck v. Pond*, 126 Wis. 382, 105 N. W. 909, the contract itself provided for deferred payments or the giving of credit for a part of the purchase money but failed in any way to fix the time when such payments were to be made, and the contract was held to be uncertain and incomplete and incapable of specific performance. A somewhat similar

situation existed in *Poole v. Tannis,* 137 Wis. 363, 118 N. W. 188, 864, and in *Bast v. Sproll,* 176 Wis. 371, 187 N. W. 223. In this last case the owners of a farm agreed to buy certain city property for a specified amount if they could sell their farm for a certain price, and in the event of the purchase of such city property agreed to pay a portion of the price on a certain date but made no provision in the contract as to time of payment of the balance. These cases have in them the common feature of an agreement between the parties to the contract of sale for deferred payments without any method being suggested by which the time may be determined when these deferred payments shall become due. There was a failure to provide any terms under which the time of the payments of the balance due was fixed. The difference sought to be pointed out manifests itself from a statement of the two situations. In the cases referred to the buyer agrees to pay according to fixed and definite terms a portion of the purchase price and the balance after a while; in the case described by the pleadings before us the purchaser agrees to pay a portion of the purchase price and the balance by assuming a mortgage now being negotiated. In the first the purchaser and the seller leave the matter indefinite as between themselves and the subject of dispute; in the second their arrangement is definite and the mortgage to be given by the seller is to be assumed by the buyer and the mortgage is to be the result of the negotiations under way at the time the agreement of purchase and sale was entered into.

Among other facts alleged there appears in the counterclaim the statement made by respondents when objecting to the offer by the seller of a first and second mortgage arrangement instead of a single first mortgage. "It is our understanding according to the terms of said contract and the intent of the parties at the time said agreement was entered into that said loan for $30,000 was to be secured by a first mortgage. . . ."

While the reference in *Washburn v. Fletcher, supra,* is to the description of the real estate among other things, the court there said, quoting with approval from Mr. Chief Justice Dixon's opinion in *Simmons v. Johnson,* 14 Wis. 523, as follows:

" 'It is sufficient, within all of the adjudications, that the deed furnishes on its face, either directly or by reference to extrinsic facts and evidences, the means by which it can be connected with its subject matter, and the intention of the parties ascertained with reasonable certainty. If it do this, it cannot fail for uncertainty. For this purpose it is enough if it refers to other deeds or writings by which the lands granted can be identified.' And again, in *Coats v. Taft,* 12 Wis. 388, the Chief Justice said: 'We do not understand the law to require that a deed should on its face ascertain the limits or quantity of the estate granted, or the particular property conveyed; but that it will be sufficient if it refers to certain known objects or things, and provides definite means by which the same may be definitely ascertained and known.' See, also, *Benedict v. Horner,* 13 Wis. 256. These cases go upon the maxim, *Id certum est quod certum reddi potest;* and, although they relate to the description of the land, are equally applicable to the expression of the consideration. It is not perceived why the doctrine of them is not applicable to an executory agreement for the conveyance of lands as well as to an executed conveyance."

The facts appearing from the pleadings are susceptible of the interpretation that the terms of the mortgage had been under consideration; the agreement expressly recites that the respondents will assume the mortgage which appellant at the time was negotiating and provided that the mortgage was to be a first mortgage on the premises respondents were buying; respondents provided that they were not obliged to complete the deal or accept the premises or pay any further additional amounts on the purchase unless "said vendor within a reasonable time, to wit, ninety days, shall complete said loan to be secured by said mortgage for $30,000 on said premises,

and that in case said vendor fails to effect said loan and place said mortgage on the premises the purchasers shall not be bound. . . ."

On a motion for judgment on the pleadings as upon a demurrer, every allegation and inference of the pleadings should be considered in the most favorable light to the person against whom judgment is asked. Therefore the facts contained in and the inferences to be drawn from the pleadings that there are surrounding circumstances and negotiations capable of showing that the mortgage is an independent contract, the terms of which were known and agreed upon, prevent the granting of judgment in this case upon the pleadings.

The statute of frauds like other general rules must not be used to permit defaults and transgressions quite as grievous as those the statute was enacted to prevent. The general purpose of the law is described in its ancient title to prevent frauds and perjury. It was not intended to give one party or the other a technical escape from a fair and definite agreement. As was said by Mr. Justice DOERFLER in *Pierson v. Dorff,* 198 Wis. 43, 223 N. W. 579:

"Nowhere do we find a greater divergence of opinion on a legal question than that which exists in the various jurisdictions of last resort in this country upon a construction of the statute of frauds and with respect to what may be sufficient to meet the calls of the statute. This court has also traveled some distance beyond what might properly be deemed the intent entertained by the legislative body in enacting this law. The liberal construction placed on such statute made itself manifest at a very early date in the judicial history of this state, and this spirit of liberality has continued without interruption up to the present time, and we must therefore conclude that such constructions as were placed upon the statute by this court have been so firmly rooted as to constitute definitely the law of this state."

In *Spence v. Frantz,* 195 Wis. 69, 217 N. W. 700, there is a ruling that parol evidence may be received to identify

land to be conveyed where there is some language in the writing to which parol evidence could be linked and the property identified with reasonable certainty.

It appears until shortly before the action was begun that all parties believed the contract valid and enforceable and acted accordingly. While this is not controlling, it suggests the likelihood of reasonableness in the inference drawn from the facts pleaded that the terms of the mortgage were understood and acceptable.

We are of the opinion that on the record here presented judgment ought not to have been granted on the pleadings.

*By the Court.*—Judgment reversed, and cause remanded for further proceedings according to law.

OWEN, J. (*concurring*). I concur in the conclusion reached in this case, but I am not certain that my reasons for such concurrence are stated in the opinion. It seems proper that I state the grounds upon which I base my conclusion.

The statute of frauds goes no further than to require the contract actually made between the parties to be reduced to writing, which writing may be informal, and consist only of a note or memorandum. If the writing evidences the agreement which the parties actually entered into, the agreement cannot be held void under the statute of frauds.

It is apparent that the agreement between the parties was, on the one hand to sell and on the other to purchase certain real estate at the agreed price of $63,000, of which $14,000 was to be paid in cash. Before the consummation of the deal the vendor was to negotiate a loan upon the premises to the amount of $30,000 and the vendees were to take title to the premises and assume and agree to pay the $30,000 mortgage. There can be no question that this agreement was reduced to writing, and thus the statute of frauds was satisfied.

Confusion has arisen in this case because there has been an attempt to apply to the facts presented a rule applicable

to an entirely different situation. Where A. agrees with B. to buy certain real estate at a certain price, part to be paid in cash upon the delivery of the deed and the remainder in deferred payments, it is apparent that a note or memorandum which simply indicates that fact, as for example in the case of *Harney v. Burhans,* 91 Wis. 348, 64 N. W. 1031, does not express the entire agreement between the parties. It is apparent that if an enforceable contract was entered into, the parties agreed upon the time the deferred payments were to become due and upon the rates of interest they were to bear; hence it is obvious that a memorandum which simply specifies that the payment of a certain portion of the purchase price is to be deferred does not express all of the agreement between the parties.

This is not the situation here presented. In this case the plaintiffs agreed to buy the land and to pay a certain price therefor, after the defendant had negotiated a loan for $30,000 secured by a mortgage on the real estate. In effect the plaintiffs constituted the defendant their agent to negotiate this mortgage, without any limitation as to the rate of interest it should bear or the length of time it should run. Apparently they had sufficient confidence in the defendant so that they were willing to assume any mortgage for $30,000 that it might negotiate. This might or might not have constituted good business conduct, but it is not perceived why a person *sui juris* may not make such a contract and may not repose such confidence in another with whom he is doing business.

When the mortgage was negotiated for the amount of $30,000 the plaintiffs' agreement was to assume and agree to pay this mortgage, no matter what the rate of interest and no matter what its terms or duration. When the mortgage should be recorded the plaintiffs agreed to assume it and to pay the balance of the $63,000 in the manner definitely

set forth in the written agreement between the parties. If it be said that this agreement is void under the statute of frauds, then it necessarily results that such an agreement cannot be entered into at all. I think it would be rather unfortunate if agreements of this kind could not be made. If I desire to buy my friend's house, and I am able to buy it provided the purchase price can be diminished by the placing of a mortgage on the property, I see no reason why I cannot authorize my friend to negotiate the mortgage, and assume and agree to pay it as a part of the purchase price. I believe this to be a definite and enforceable agreement, but, whether it is or not, I am certain that it is not void under the statute of frauds. The requirements of that statute are fully met when the exact agreement made between us is reduced to writing. The mortgage, when negotiated, becomes a definite part of the agreement. Even though the terms of the mortgage might have been uncertain in the beginning, I authorize my friend to agree upon the terms of the mortgage. When it was executed its terms became definite, and I definitely agreed to assume and pay it as a part of the purchase price. I feel positive that the agreement involved in this case was not void under the statute of frauds, because the writing faithfully expressed the exact contract entered into, and I further think that the contract is not void for any other reason. I therefore agree that the judgment should be reversed.